Paul Max PACE, Appellant,

v.

Linda Ruth Thomas PACE, Appellee.

No. 05–03–00520–CV.

Court of Appeals of Texas,
Dallas.

April 22, 2005.

Jimmy L. Verner, Jr., Verner & Brumley, Dallas, for appellant.

Georganna L. Simpson, Law Office of Georganna L. Simpson, Dallas, for appellee.

Suzanne Duvall, Dallas, Attorney-Mediator.

Before Justices FITZGERALD, LANG, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

Paul Max Pace appeals the division of property in this divorce case. Pace challenges the trial court's characterization of certain property as his wife's[1] separate property and argues this characterization prevented a just and right division of the couple's property. In eight issues, Pace argues (1) there is no evidence to support the trial court's findings of fact that the couple's Harvest Hill home and the assets in the Linda Ruth Thomas Management Trust (Management Trust) are Thomas's separate property, (2) the trial court erred

---

1. The trial court's final decree of divorce changed Linda Ruth Thomas Pace's name to Linda Ruth Thomas. For clarity, we refer to her as Thomas.

by granting partial summary judgment in favor of Thomas and holding that the A.G. Edwards investment account (172 account) is Thomas's separate property because Thomas failed to rebut the community property presumption, and (3) the trial court abused its discretion in dividing the community estate because the mischaracterization of the Harvest Hill house and the 172 account as Thomas's separate property prevented a just and right division of the property. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Thomas and Pace were married on March 8, 1997. Both had been married before and both had adult children from their previous marriages, but they had no children together. After four and one-half years of marriage, the parties separated and Thomas filed for divorce. Pace filed a counterpetition for divorce asserting his separate property and equitable interest claims as well as a claim for reimbursement against Thomas's separate property estate.

### A. Thomas's Inheritance

Thomas inherited her parents' estates, consisting mostly of bonds and other securities, when they died in the mid–1990s. She invested this inheritance in the 172 account prior to her marriage to Pace. At the time of her marriage to Pace, the inheritance was valued at $2.7 million.

### B. No Signed Prenuptial Agreement

Before they were married, Thomas had her attorney prepare a prenuptial agreement to protect her assets and asked Pace to sign it. Pace made revisions to the agreement and, a few days before the wedding, told Thomas that he wanted his nephew, an attorney, to review the agreement before he signed it. Because there was not enough time for the attorney to review the prenuptial agreement before the wedding, Pace told Thomas he would sign it when they returned from their honeymoon. Thomas again asked Pace to sign the prenuptial agreement after the honeymoon, but he refused.

### C. Creation of the 204 Account and the Management Trust

Twenty-three days after they were married and after Pace refused to sign the prenuptial agreement, Thomas instructed A.G. Edwards to "sweep" all dividends, interest, and income from the 172 account and place the income in a new account (204 account) so that no community property would accrue in the 172 account.

About three years later, Thomas instructed her attorney to set up the Management Trust with Thomas as the donor, trustee, and sole beneficiary to segregate Thomas's separate property and to protect her from possible third party liability. The 172 account was transferred into the Management Trust and A.G. Edwards continued to "sweep" all dividends, interest, and income from that account into the 204 account.

### D. The Harvest Hill House

When they were first married, Thomas and Pace lived in Thomas's house which she owned and lived in before their marriage. Two months after they were married, the Harvest Hill house was purchased. Thomas wrote a check for $1,000 as earnest money for the Harvest Hill house and a check for $200 for an inspection. Both checks were drawn on an account bearing only Thomas's name. Prior to closing, Thomas wired $194,102.53 from the 172 account to the title company in full payment of the Harvest Hill house. No credit or notes were obtained to purchase the house, and Pace did not contribute any money toward the purchase of the house.

A few days before closing, Pace told Thomas that he wanted to be on the deed to the Harvest Hill house because he did not want to feel like a tenant in the house. Thomas agreed to put his name on the deed, and Thomas and Pace both signed the settlement statement and the warranty deed. The settlement statement identified the purchasers as Pace and Thomas. The warranty deed identified the grantees as Pace and Thomas. Thomas and Pace resided in the Harvest Hill house until they separated. During that time, Thomas paid the ad valorem taxes, the fire and extended coverage insurance, and the upkeep of the Harvest Hill house from the 204 account.

At the time she set up the Management Trust, Thomas also signed a power of attorney and prepared her will. The power of attorney gave her daughter the right to make decisions on Thomas's behalf with respect to real property, including the Harvest Hill house, which the power of attorney describes in part as having been "acquired jointly with [her][s]pouse, Paul M. Pace... as [their] personal residence." Also, Thomas's will provided that Pace would receive the Harvest Hill house if she pre-deceased him. Thomas testified that she left the house to Pace because she did not want the fact that Pace's name is on the warranty deed to tie up the remainder of her estate.

### E. Divorce Proceedings

Before trial, Thomas filed a motion for partial summary judgment seeking judgment as a matter of law denying Pace's community property characterization claims against her individually and as trustee of the Management Trust, that she did not commingle community property funds with her separate property assets contained in the Management Trust, and that all purchases of securities during the mar-

riage were made with her separate property funds. Thomas supported her motion with her own affidavit and that of Shelley Turner, an employee of A.G. Edwards who handles the 172 account. Pace responded to the motion and attached four monthly statements for 1997 for the 172 account and three monthly statements for 1997 for the 204 account, along with the affidavit of Barbara Dossett, a bookkeeper and owner of The Taxpayer's Service who had inspected the account statements.

The trial court granted partial summary judgment in favor of Thomas sustaining Thomas's request to deny Pace's community property characterization and commingling claims against the 172 account, but not the other assets contained in the Management Trust. The remaining issues were tried to the court. The trial court granted the divorce and in the decree reaffirmed the prior partial summary judgment. The trial court also issued findings of fact and conclusions of law.

### II. THE TRIAL COURT'S FINDINGS ARE SUPPORTED BY THE EVIDENCE

In his first through fourth issues on appeal, Pace argues there is no evidence to support the trial court's findings of fact characterizing the Harvest Hill house and the assets in the Management Trust, including the 172 account, as Thomas's separate property. We disagree.

### A. Standard of Review for Legal Sufficiency

Findings of fact in a case tried to the court have the same force and effect as jury findings. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994); *Padilla v. Flying J, Inc.,* 119 S.W.3d 911, 913 (Tex. App.-Dallas 2003, no pet.). *See Gregory v. Sunbelt Sav., F.S.B.,* 835 S.W.2d 155, 158 (Tex.App.-Dallas 1992, writ denied). An appellate court reviews a trial court's find-

ings of fact by the same standards that it uses to review the sufficiency of the evidence to support a jury's findings. *See Zieben v. Platt,* 786 S.W.2d 797, 799 (Tex. App.-Houston [14th Dist.] 1990, no writ).

When a party attacks an adverse finding on an issue that he did not have the burden to prove at trial, he must show on appeal that there is insufficient or no evidence to support the adverse finding. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Vongontard v. Tippit,* 137 S.W.3d 109, 112 (Tex.App.-Houston [1st Dist.] 2004, no pet.). A no evidence challenge to a trial court's finding of fact is a question of law, which challenges the legal sufficiency of the evidence to support the particular finding. *Tate v. Tate,* 55 S.W.3d 1, 4 (Tex.App.-El Paso 2000, no pet.).

When an appellate court reviews a finding of fact for legal sufficiency, it considers only the evidence and inferences that tend to support that finding, and disregards all of the contrary evidence and inferences. *See Latch v. Gratty, Inc.,* 107 S.W.3d 543, 545 (Tex.2003); *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995). An appellate court upholds a finding of fact if it is supported by more than a scintilla of evidence. *Burroughs,* 907 S.W.2d at 499. The reviewing court does not substitute its judgment for that of the fact-finder, even if it would have reached a different result when reviewing the evidence. *FDIC v. F & A Equip. Leasing,* 854 S.W.2d 681, 684–85 (Tex. App.-Dallas 1993, no writ).

### B. Law of Separate and Community Property

In Texas, all marital property is either separate or community. *Hilley v. Hilley,* 161 Tex. 569, 573, 342 S.W.2d 565, 567 (Tex.1961). Property possessed by either spouse during or upon the dissolution of their marriage is presumed to be community property. Tex. Fam.Code Ann. § 3.003(a) (Vernon 1998). Property owned or claimed by a spouse before marriage remains that spouse's separate property during and after the marriage. Tex. Const. XVI, § 15; Tex. Fam.Code Ann. § 3.001 (Vernon 1998). Property purchased during the marriage with separate funds is separate property. *Hilley,* 161 Tex. at 573–74, 342 S.W.2d at 567. Clear and convincing evidence is necessary to establish that property is separate property. Tex. Fam.Code Ann. § 3.003(b). A trial court may not divest a party of his separate property by a divorce decree. *In re Marriage of Murray,* 15 S.W.3d 202, 205 (Tex.App.-Texarkana 2000, no pet.) (citing *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 142 (Tex.1977)).

Property is characterized as separate or community at the time of the inception of title. The inception of title doctrine fixes the character of certain property interests when a party first acquires a right or claim to the property; title need not be vested at such time. *See, e.g., Henry S. Miller Co. v. Evans,* 452 S.W.2d 426, 430 (Tex.1970); *Strong v. Garrett,* 148 Tex. 265, 224 S.W.2d 471 (1949); *Stavinoha v. Stavinoha,* 126 S.W.3d 604, 613 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

### C. The Harvest Hill House

In his first issue on appeal, Pace argues there is no evidence to support the trial court's finding of fact that "[a]fter the marriage, [Thomas] purchased the following property with separate monies: [the Harvest Hill house], value undisputed."

#### 1. Applicable Law

A spouse who purchases real property during the marriage with her separate property, but takes title to the

property in the names of both spouses is presumed to have made a gift to the other spouse of one-half interest in the property. *Cockerham v. Cockerham*, 527 S.W.2d 162, 167–68 (Tex.1975); *Whorrall v. Whorrall*, 691 S.W.2d 32, 35 (Tex.App.-Austin 1985, writ dism'd). This presumption may be rebutted by clear and convincing evidence that there was no intent to make a gift. *Cockerham*, 527 S.W.2d at 168; *Whorrall*, 691 S.W.2d at 35.

### 2. Analysis

■■■ At trial, Pace claimed that Thomas made a gift to him of a one-half interest in the Harvest Hill house which Thomas claimed as her separate property and asked the court to award him that one-half interest. On appeal, Pace contends that the Harvest Hill house is presumed to be community property and that there is no evidence the Harvest Hill house is Thomas's separate property because there is no evidence the earnest money check was drawn on Thomas's separate property account. Although Pace did not raise this issue in the trial court, a complaint regarding the legal insufficiency of the evidence in a nonjury case may be made for the first time on appeal. Tex.R.App. P. 33.1(d); *Yarbrough v. Yarbrough*, 151 S.W.3d 687, 689–90 (Tex.App.-Waco 2004, no pet. h.); *Nelson v. Najm*, 127 S.W.3d 170, 176 (Tex. App.-Houston [1st Dist.] 2003, pet. denied).

Thomas testified at trial that the earnest money check was paid from her separate funds and Pace offered no evidence to the contrary. Evidence in the trial court included an excerpt of Pace's deposition in which he admitted the Harvest Hill house was purchased completely with Thomas's separate property. This is some evidence that the earnest money check was drawn on Thomas's separate property account.

Because the evidence is uncontroverted, it is also clear and convincing evidence that the funds used to purchase the Harvest Hill house were traced to Thomas's separate assets. *See Celso v. Celso*, 864 S.W.2d 652, 655 (Tex.App.-Tyler 1993, no writ) (where evidence is uncontroverted that husband's separate property assets were used to purchase house then evidence is clear and convincing that husband traced purchase of house to his separate property assets); *see also Holloway v. Holloway*, 671 S.W.2d 51, 55 (Tex.App.-Dallas 1983, writ dism'd) (party's uncontroverted testimony alone is sufficient to establish separate property nature of asset).[2]

We conclude the evidence was sufficient to support the trial court's finding that the Harvest Hill house was Thomas's separate property. Pace's first issue is overruled.

### D. The Management Trust

■■■ In his second, third and fourth issues, Pace argues there is no evidence to support the trial court's findings that Thomas owned the assets contained in the Management Trust prior to the marriage or that Thomas transferred the income derived from these assets to the community estate during the marriage. Pace argues there is no evidence to support the following findings of fact made by the trial court:

(1) Before the marriage, [Thomas] owned the following propert[y]: The assets currently found in [the Management Trust], which includes [the 172 account] and the other assets set forth on Exhibits A and B attached hereto, value undisputed;

(2) [Thomas] created the [Management Trust] on November 13, 2000, and the assets therein are set forth on

---

**2.** In fact, although not evidence, Pace's attorney even admitted during trial that the Har- vest Hill house was purchased solely with Thomas's separate property.

Exhibits A and B attached hereto, all of which were owned by [Thomas] prior to marriage; and

(3) All income derived from the properties held by the [Management Trust] was transferred to the community estate during the marriage.

In his brief, Pace discusses only one asset contained in the Management Trust—the 172 account—under these three issues. His brief does not cite to authorities or to the record about any other assets contained in the Management Trust.

Rule 38 requires appellant's brief to contain a statement of the facts of the case, supported by record references, and a clear and concise argument for the contentions made, with appropriate citations to authorities and the record. Tex.R.App. P. 38.1(f), (h); *see Rhoades v. State,* 934 S.W.2d 113, 119 (Tex.Crim.App.1996); *Aldrich v. State,* 928 S.W.2d 558, 560 (Tex. Crim.App.1996). The failure to do so waives any error on appeal. *See Lawton v. State,* 913 S.W.2d 542, 558 (Tex.Crim. App.1995); *Narvaiz v. State,* 840 S.W.2d 415, 430 (Tex.Crim.App.1992); *Robinson v. State,* 851 S.W.2d 216, 222 n. 4 (Tex.Crim. App.1991). We conclude Pace has waived issues two, three and four concerning all assets, other than the 172 account, contained in the Management Trust.

We discuss the trial court's characterization of the 172 account under Pace's fifth and sixth issues where we conclude the trial court did not err in characterizing the 172 account as Thomas's separate property. As a result, we overrule Pace's second, third and fourth issues.

### III. No Issue of Fact to Preclude Partial Summary Judgment

In his fifth and sixth issues on appeal, Pace argues the trial court erred in granting and reaffirming Thomas' motion for partial summary judgment denying Pace's claim that the 172 account is community property because she failed to rebut the community property presumption. Pace contends that Thomas failed to conduct any tracing of the assets. Thomas responds that the trial court did not err because the affidavit of Dossett attached to Pace's response to her motion for partial summary judgment is not competent summary judgment evidence and, even if it were, it does not raise a genuine issue of material fact.

### A. Standard of Review for Traditional Summary Judgment

The standard for reviewing a traditional summary judgment under Texas Rule of Civil Procedure 166a(c) is well established. *See Sysco Food Servs. v. Trapnell,* 890 S.W.2d 796, 800 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). *See also Caldwell v. Curioni,* 125 S.W.3d 784, 789 (Tex.App.- Dallas 2004, no pet.). A traditional summary judgment is reviewed de novo to determine whether a party's right to prevail is established as a matter of law. *Caldwell,* 125 S.W.3d at 789; *Dickey v. Club Corp. of Am.,* 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). When reviewing the record in an appeal involving a traditional summary judgment, the reviewing court must (1) place the burden of showing that there is no genuine issue of material fact on the party that moved for traditional summary judgment, (2) take all evidence favorable to the nonmovant as true, and (3) indulge every reasonable inference and resolve all doubts in favor of the nonmoving party. *E.g., M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23–24 (Tex.2000) (per curiam). *See also Caldwell,* 125 S.W.3d at 789.

## B. Applicable Law

To prevail on a motion for traditional summary judgment under rule 166a(c), a plaintiff must show that he is entitled to prevail on each element of his cause of action. *See Boudreau v. Fed. Trust Bank*, 115 S.W.3d 740, 743 (Tex. App.-Dallas 2003, pet. denied); *Ortega–Carter v. Am. Int'l Adjustment Co.*, 834 S.W.2d 439, 441 (Tex.App.-Dallas 1992, writ denied). The party moving for traditional summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Willrich*, 28 S.W.3d at 23. *See also Boudreau*, 115 S.W.3d at 743. Once the plaintiff has established his right to summary judgment as a matter of law, the burden then shifts to the defendant as nonmovant to present evidence that raises a genuine issue of material fact thereby precluding summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979).

## C. Analysis

Pace does not dispute that Thomas inherited the assets in the 172 account or that Thomas owned the 172 account prior to their marriage. Pace also does not claim that deposits were made into the 172 account from their community property incomes. Pace's argument is that the interest income from the 172 account was not swept properly into the 204 account and, as a result, was commingled with the underlying securities in the 172 account causing the entire 172 account to lose its identity as separate property. Pace argues Thomas failed to show the property was not commingled. We disagree.

Thomas testified that she set up the 204 account to hold the income generated by the 172 account to prevent commingling of the separate and commu-

nity assets and that the income was transferred monthly. A spouse is competent to testify concerning the characterization of property without producing independent documentation such as bank records. *See Vannerson v. Vannerson*, 857 S.W.2d 659, 668 (Tex.App.-Houston [1st Dist.] 1993, writ denied). The testimony of a spouse seeking to overcome the community property's presumption need not be corroborated to meet the clear and convincing standard. *Holloway*, 671 S.W.2d at 56; *Newland v. Newland*, 529 S.W.2d 105, 107–08 (Tex.Civ.App.-Fort Worth 1975, no writ); *but see Boyd v. Boyd*, 131 S.W.3d 605, 614–17 (Tex.App.-Fort Worth 2004, no pet. h.). However, a party's unsupported and contradicted testimony may not meet the clear and convincing standard. *See Johnson v. Johnson*, 804 S.W.2d 296, 300–01 (Tex.App.-Houston [1st Dist] 1991, no writ).

In this case, Thomas's testimony is not unsupported or contradicted. Pace did not dispute that Thomas owned the 172 account as her separate property. And Turner corroborated Thomas's testimony that the community property income was never commingled with Thomas's separate property in the 172 account. The instructions to A.G. Edwards to sweep the income into a separate account also corroborated Thomas's and Turner's affidavits that the income from the 172 account was not commingled with the 172 account assets. Thomas's evidence adequately dispelled the community property presumption by showing the property was not commingled. *See Hanau*, 730 S.W.2d at 667; *Welder v. Welder*, 794 S.W.2d 420, 425 (Tex.App.-Corpus Christi 1990, no writ).

Additionally, Pace's evidence failed to raise a fact issue that the community property income had been commingled with the

172 account.[3] Dossett's affidavit does not controvert Thomas's summary judgment evidence that income on the 172 account was maintained as a credit and swept into the community 204 account. Instead, she states only that some interest earned on funds held in an interest-bearing account within the 172 account was not swept into the 204 account and that these funds were used to purchase new securities. But she does not identify the amount she contends should have been swept or the amount not swept, does not state that she has personal knowledge the interest was not swept, does not identify where the 172 or 204 account summaries support her theory, and does not explain the basis for her conclusion. In fact, her affidavit purports to explain, "[b]y way of example," but the explanation that follows does not refer to interest. Even with the supporting summaries, Dossett's statement that the interest from the interest-bearing account was not swept is a conclusion with no factual basis and is insufficient to raise a fact question.[4] *See Brown v. Brown,* 145 S.W.3d 745, 751–52 (Tex.App.-Dallas 2004, pet. denied); *Rizkallah v. Conner,* 952 S.W.2d 580, 587–88 (Tex.App.-Houston [1st Dist.] 1997, no pet.). As a result, there is no summary judgment evidence that the interest was not swept.

 Dossett also stated that stock was sold for a profit in July and four days later those proceeds were invested in the 172 account. But proceeds from the sale of separate property are the separate property of the spouse whose property was sold. *Scott v. Scott,* 805 S.W.2d 835, 838 (Tex.App.-Waco 1991, no writ). Also, an increase or decrease in the value of separate property is an inherent part of the property itself and cannot be separated from it. *Dawson–Austin v. Austin,* 920 S.W.2d 776, 788 (Tex.App.-Dallas 1996), *rev'd on other grounds,* 968 S.W.2d 319 (Tex.1998) (holding that an increase in the value of separate property stock remains separate property); *Smith v. Smith,* 22 S.W.3d 140, 150 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (same). We conclude Pace failed to raise a fact issue concerning the separate property characterization of the 172 account.

We overrule Pace's fifth and sixth issues.

## IV. JUST AND RIGHT PROPERTY DIVISION

In his seventh and eighth issues, Pace argues the trial court abused its discretion in dividing the couple's estate because the mischaracterization of the Harvest Hill house and the 172 account as Thomas's separate property prevented a just and right division of the property.

 The trial court ruled that the division of Thomas's and Pace's property is just and right even if it mischaracterized the property. We interpret this to mean that the court would have divided the property the same way regardless of whether the property is separate or community. *See Vandiver v. Vandiver,* 4 S.W.3d 300, 303 (Tex.App.-Corpus Christi

---

3. Thomas argues the trial court should have granted her motion to strike Dossett's affidavit because Pace failed to disclose Dossett as a witness in discovery and because the affidavit is not competent summary judgment evidence. The trial court did not rule on the motion and, in fact, considered Dossett's affidavit in reaching its decision. Because we affirm the trial court's judgment, we need not reach the merits of this issue.

4. If the correct amount was swept, mixing of dollars alone does not result in commingling. *See Trawick v. Trawick,* 671 S.W.2d 105, 110–11 (Tex.App.-El Paso 1984, no writ) (one dollar has the same value as another dollar and no commingling by the mixing of dollars where the amount owned by each is known); *Farrow v. Farrow,* 238 S.W.2d 255, 257 (Tex. Civ.App.-Austin 1951, no writ) (same).

1999, pet. denied). When the trial court finds that its property division is just and right regardless of any mischaracterization of the property, even though the value of the property mischaracterized is great, the mischaracterization does not affect the trial court's just and right division of the property. *Id.* at 302; *see Tate v. Tate,* 55 S.W.3d 1, 7 (Tex.App.-El Paso 2000, pet. denied).

Even if we were to assume that Pace's contention is correct and that the trial court mischaracterized the property, his arguments nevertheless fail. Pace must also conduct a harm analysis and demonstrate how the purported mischaracterization caused the trial court to abuse its discretion or that it had more than a de minimus impact on a just and right division of the community estate. *Vandiver,* 4 S.W.3d at 302; *Tate,* 55 S.W.3d at 7. Pace makes no argument as to why the property division is unfair or unjust apart from the alleged mischaracterization. In short, he has failed to conduct a harm analysis. Our review of the record indicates that no harm can be shown.

Because we have concluded the trial court did not err in its characterization of the Harvest Hill house and the 172 account, we also conclude that Pace has failed to show the trial court abused its discretion in dividing the property.

We overrule Pace's seventh and eighth issues.

## V. CONCLUSION

We conclude the evidence is sufficient to sustain the trial court's findings of fact that the Harvest Hill house and the assets in the Management Trust are Thomas's separate property. We also conclude the trial court did not abuse its discretion in granting partial summary judgment in favor of Thomas that the 172 account is her separate property. We also conclude that the trial court did not abuse its discretion in determining that the division of property was just and right. We affirm the trial court's judgment.