

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00050-CV

IN THE MATTER OF THE MARRIAGE OF ANGIE DOUTHIT
AND CHARLEY L. DOUTHIT

On Appeal from the 223rd District Court
Gray County, Texas
Trial Court No. 38,821, Honorable Phil N. Vanderpool, Presiding

April 15, 2019

OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

Appellant, Angie Douthit, appeals the trial court's characterization of an asset and denial of her reimbursement claim incident to her divorce from appellee, Charley L. Douthit. We affirm.

Background

Charley and Angie were married in 2010. Angie filed a petition for divorce from Charley in 2017. A final decree of divorce was filed on February 1, 2018, following a bench trial. In this appeal, Angie challenges the trial court's determinations that (1) the parties' residence, located at 1900 Hamilton in Pampa, is Charley's separate property,

and (2) the community estate is not entitled to reimbursement for improvements to another tract of Charley's separate property.

## Standard of Review

A trial court's division of a marital estate is reviewed for abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules and principles. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). However, the mere fact that a trial judge may decide a matter within its discretionary authority in a different manner than an appellate judge would in a similar situation does not demonstrate that an abuse of discretion has occurred. *Sw. Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex. 1965) (citing *Jones v. Strayhorn*, 321 S.W.2d 290, 295 (1959)).

When we review a family law case under the abuse of discretion standard, challenges to the sufficiency of the evidence do not constitute independent grounds of error but are relevant factors in determining whether the trial court abused its discretion. *Van Hooff v. Anderson*, No. 07-14-00080-CV, 2016 Tex. App. LEXIS 466, at *8 (Tex. App.—Amarillo Jan. 14, 2016, no pet.) (mem. op.) (citing *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.)). In determining whether the trial court abused its discretion by deciding an issue without sufficient evidentiary support, "we engage in a two-pronged inquiry: (1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion?" *Boyd*, 131 S.W.3d at 611.

2

Analysis

Characterization as Separate Property

Angie's first issue challenges the trial court's determination that the parties' residence, located at 1900 Hamilton in Pampa, is Charley's separate property. The 1900 Hamilton property was conveyed from Jerry and Traci Douthit (Charley's son and daughter-in-law) to Charley and Angie by warranty deed dated October 29, 2014. Both Charley and Angie testified that the property was acquired in a trade with Charley's son, Jerry, and that no other consideration was given. Charley testified that he traded a ten-acre tract of land he owned before marriage in exchange for the 1900 Hamilton property. Angie, however, contends that the residence cannot be traced back to Charley's separate property, because the evidence failed to establish Charley's ownership of the ten-acre tract which was traded for the residence.

Under Texas law, property possessed by either spouse during or on dissolution of the marriage is presumed to be community property, in the absence of clear and convincing evidence to the contrary. TEX. FAM. CODE ANN. § 3.003 (West 2006). To overcome the community presumption, the spouse claiming certain property as separate property has the burden to trace and clearly identify the property claimed to be separate. *Estate of Hanau v. Hanau*, 730 S.W.2d 663, 667 (Tex. 1987). A spouse's separate property consists of, inter alia, "the property *owned or claimed* by the spouse before marriage." TEX. FAM. CODE ANN. § 3.001 (West 2006) (emphasis added). And, as is relevant here, "[p]roperty acquired in exchange for separate property becomes the separate property of the spouse who exchanged the property." *Ridgell v. Ridgell*, 960

S.W.2d 144, 148 (Tex. App.—Corpus Christi 1997, no pet.) (citing *Dixon v. Sanderson*, 10 S.W. 535, 536 (Tex. 1888)).

Angie's position fails to account for the full statutory definition of separate property. Although Charley did not produce a deed or other documentation reflecting his ownership of the ten-acre tract that was traded for the 1900 Hamilton property, he did present evidence that he *claimed* the tract before marriage, even though he had not yet obtained the legal title or evidence of title. Charley testified that he purchased the tract from his brother Bob years before his marriage to Angie. At the time of Bob's death, he had not yet transferred title to Charley. Charley paid the taxes on the property for years, and both he and Bob's widow, Gwen, understood that Charley owned the property. When Charley decided to trade the property to his son Jerry in exchange for the 1900 Hamilton property, Gwen agreed to simply convey the tract directly to Jerry. Thus, Charley's evidence showed that the ten-acre tract was property that he claimed before marriage. *See Sauvage v. Wauhop*, 143 S.W. 259, 263 (Tex. Civ. App.—Texarkana 1912, no writ) ("The words 'owned or claimed' were manifestly used in the statute, we think, to signify a legal or equitable ownership or legal or equitable right of demand of the land").

Moreover, Angie's own testimony corroborated Charley's ownership of the ten-acre tract. Angie agreed that the 1900 Hamilton property was acquired in an exchange:

Q: That wasn't a house that was his prior to marriage, was it?

A: No.

Q: Now, that was a trade from certain property that [Charley] had south of town, it was kind of a direct trade; is that right?

A: He traded, yes.

4

Q: Okay. Did you put any money into that trade or was it just a trade, as far as you know?

A: As far as I know it was just a trade.

Angie also testified that the ten-acre tract used in the exchange was property Charley had prior to their marriage:

Q: Charley had 20 acres of land before marriage[,] correct?

A: Correct.

Q: And a half of that plus the improvements on it were traded for the house at 1900 Hamilton?

A: Yes.

Angie further testified that no other property or funds were used to acquire the 1900 Hamilton property.

Given Angie's admission that Charley had the ten-acre tract before their marriage, she cannot now, on appeal, be heard to complain that he did not establish this fact with sufficient evidence. *See, e.g., Gana v. Gana*, No. 14-05-00601-CV, 2007 Tex. App. LEXIS 3094, at *15 (Tex. App.—Houston [14th Dist.] Apr. 24, 2007, no pet.) (mem. op.) (where wife admitted in testimony that husband owned real property before marriage, her testimony constituted a judicial admission; her admission and husband's testimony constituted sufficient evidence to overcome community property presumption and to demonstrate husband's separate ownership).

The evidence was uncontroverted that the only consideration given for the residence at 1900 Hamilton was the exchange of property Charley owned or claimed before marriage. This is clear and convincing evidence that the 1900 Hamilton residence

5

was traceable to Charley's separate assets.  *See Celso v. Celso*, 864 S.W.2d 652, 655 (Tex. App.—Tyler 1993, no writ) (where evidence was uncontroverted that husband's separate property assets were used to purchase house, then evidence was clear and convincing that husband traced purchase of house to his separate property assets); *see also Pace v. Pace*, 160 S.W.3d 706, 712 (Tex. App.—Dallas 2005, pet. denied) (wife's uncorroborated and uncontroverted testimony was sufficient to constitute clear and convincing evidence of separate property nature of asset).

We therefore conclude that the trial court did not abuse its discretion in determining that Charley met his burden of proving and tracing his separate property.  We overrule Angie's first issue.[1]

Reimbursement Claim

In her second issue, Angie contends the trial court erred in rejecting her claim for reimbursement to the community estate.  Angie alleged that the community expended approximately $20,000 to improve another ten-acre tract of property owned by Charley. The trial court found that the tract was not enhanced for reimbursement purposes and that the community received the use, benefit, and enjoyment of any expenditures made.

A right of reimbursement arises when the funds of one estate are used to benefit and enhance another estate without itself receiving some benefit.  *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982).  "[I]t also arises when community time, talent[,] and labor

---

[1] In a passing reference, Angie claims that because the 1900 Hamilton property cannot be traced back to Charley's separate property, it must be presumed to be either community property or a gift.  In the event that Angie asserts that the trial court erred in failing to find that Charley intended to make a gift of one half of the interest in the 1900 Hamilton property to Angie, she has not briefed this issue.  Issues not briefed are waived.  *Employers' Nat'l Life Ins. Co. v. Willits*, 436 S.W.2d 918, 923 (Tex. Civ. App.—Amarillo 1968, writ ref'd n.r.e.) (and cases cited therein).

are utilized to benefit and enhance a spouse's separate estate, beyond whatever care, attention, and expenditure are necessary for the proper maintenance and preservation of the separate estate, without the community receiving adequate compensation." *Id.* Such claims are governed by section 3.402 of the Texas Family Code. TEX. FAM. CODE ANN. § 3.402 (West Supp. 2018). The party seeking reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable. *Vallone*, 644 S.W.2d at 459. A trial court has "great latitude" in evaluating claims for reimbursement. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988).

There was no dispute that this ten-acre tract was Charley's separate property. The evidence showed that Charley purchased the tract for $10,000 in 1999. Charley started making improvements to it after his marriage to Angie. He spent approximately 200 hours building a barn from materials that were located on the property. He testified that he spent $11,064.15 on the improvements, and these funds came from his separate property account. Charley estimated that, considering both materials and labor, $20,000 was spent improving the ten-acre property. When asked if the property was now worth $50,000, with the barn on it, he answered, "Today maybe, yeah."

Angie testified that the property was worth more now than it was before, but there was no testimony as to the value of the tract at the time the parties married in 2010. There was also no testimony about the value of any enhancements to the tract.

The party seeking reimbursement must prove the enhanced value, if any, attributable to community expenditures. *McCann v. McCann*, 22 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Even if community assets were expended

improving Charley's property, it was Angie's burden to show the enhanced value to Charley's estate. In her brief, Angie alleges simply that the property was purchased for $10,000 and now has a value of $50,000, so the community was entitled to a portion of the $40,000 difference. This argument fails to account for the value of the property at the time of marriage and the enhanced value attributable to community expenditures. Without such evidence, the trial court was justified in denying Angie's claim for reimbursement. *See Zagorski v. Zagorski*, 116 S.W.3d 309, 322 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g).

We conclude the trial court did not abuse its discretion in declining to award reimbursement to Angie as part of its just and right division of the community estate. Angie's second issue is overruled.

Conclusion

We affirm the judgment of the trial court.


Judy C. Parker
Justice

8