**REVERSE and REMAND and Opinion Filed July 18, 2023**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00513-CV

## MARLENE ESTHER BLINK, Appellant
## V.
## RUSSELL PETER BLINK, Appellee

### On Appeal from the 302nd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DF-19-23159

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Miskel
Opinion by Justice Reichek

Marlene Esther Blink appeals the portion of the trial court's final decree of divorce awarding her former husband, Russell Peter Blink, one million shares of stock in Exos Aerospace Systems & Technologies, Inc. In a single issue, Marlene contends the trial court erred in failing to characterize the stock as community property. Because we agree the stock is community property, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

# Background

Marlene and Russell were married on December 20, 2006. In February 2015, Russell began working with Exos and, one year later, he was issued one million shares of Exos stock. Nothing on the stock certificates indicates the reason for their issuance. Although Russell stated he entered into an agreement with Exos at the time the stock was distributed, he could not find a copy of the agreement, and Exos refused to produce a copy.

On June 24, 2016, Russell signed an employment contract with Exos that contained the following relevant provisions:

> D. <u>Blink IP</u>. Any software, utilities, solutions, designs, techniques, methods, methodologies, tools, processes, templates, data or other intellectual property used or referenced by Blink in the performance of Services that was created or developed prior to the performance of any work or services for EXOS prior to Feb 26th 2015, when Blink began the performance of work or services for EXOS, and any additions, enhancements or modifications thereto (whether or not made during the performance of the Services), and all patent, copyright, trademark, trade secret and other intellectual property rights related to any of the foregoing (collectively, "Blink IP"), shall remain the sole and exclusive property of Blink (or its licensor). EXOS shall not obtain, whether pursuant to this Agreement, by estoppel, implication or otherwise, any license, right, or other interest in or to any Blink IP except as otherwise expressly provided below in this paragraph. Blink hereby grants to EXOS a paid up, royalty free, non-exclusive, non-transferable (except to commonly-controlled affiliates of EXOS) right and license to use for its and its affiliates' own internal business purposes in connection with any deliverable or the Services, and not otherwise, those portions of the Blink IP that are actually embedded into the deliverables furnished to EXOS as part of the Services, if any, but only to the extent so incorporated and excluding any third party software, hardware, tools or other products that are licensed by EXOS or commercially available.

Exhibit A to the employment contract states that Russel would be paid a salary of $100,000 per year for his services to Exos. In addition, as compensation for the "assets, access to 'Blink IP,' and inventory" Russell provided, Russell would be paid a signing fee of $40,000, an additional $47,600 upon the next fund raising event, and an annual payment of $39,500 for the next four years. Exos also agreed to take over various debts and liabilities owed by Russell. The contract stated this represented "a total compensation of over $750,000" for use of Russell's assets and intellectual property. The contract makes no reference to the one million shares of Exos stock.

Russell filed a petition for divorce on December 10, 2019. Marlene filed a counter-petition on April 13, 2022. The parties agreed on all issues regarding the division of their property with the exception of the characterization of the one million shares in Exos stock. Russell contended he received the stock as payment for his separate intellectual property and, therefore, the stock was also his separate property. Marlene's position was that Russell did not have sufficient evidence to overcome the presumption that the stock was a community asset.

In support of his assertion that the stock was his separate property, Russell submitted a letter from Exos CEO John Quinn. Quinn's letter stated that Exos gave Russell the stock in exchange for "a paid, royalty free, non-exclusive, non-transferable right and license" to use Russell's intellectual property. Quinn testified the intellectual property referenced in the letter was Russell's "experience

developing rocket technologies from the year 2000 until we commenced working with [him]."

In contrast, Russell testified his intellectual property constituted "core technologies" he developed between 2000 and 2005, before he married Marlene. According to Russell, the intellectual property he created after 2005 was "derivative of the original" and "nothing really new." He acknowledged he had no patents, copyrights, or trademarks for any of the technologies he created. He also acknowledged he did not submit any documentation showing what the "core technologies" were or that they were created before the marriage. Instead, Russell stated the intellectual property was "in [his] head" and could be found embedded in the "deliverables" he provided Exos. When asked to identify what intellectual property of his was imbedded in the deliverables, Russell stated it would be "virtually impossible" to do so. Russell agreed his employment contract gave Exos only a license to use the technologies he developed, and he retained full ownership of all his purported intellectual property.

Based on this evidence, the trial court concluded the one million shares of Exos stock were Russell's separate property because they were granted in exchange for property he possessed before marriage. Marlene brought this appeal.

**Analysis**

Whether property is separate or community property is determined by facts that, according to the rules of law, give character to the property. *Moroch v. Collins*, 174 S.W.3d 849, 855 (Tex. App.—Dallas 2005, pet. denied). All property possessed by either spouse during or on dissolution of the marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003. The degree of proof necessary to establish that property is separate property is clear and convincing evidence. *Id*. Clear and convincing evidence means that measure of proof that will produce in the mind of the factfinder a firm belief or conviction as to the truth of the allegations sought to be established. *Id*. § 101.007. This standard is not met by testimony that is contradicted, imprecise, and unsupported. *Graves v. Tomlinson*, 329 S.W.3d 128, 140 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *In re Marriage of Santopadre*, No. 05-07-0027-CV, 2008 WL 3844517, at *3 (Tex. App.—Dallas Aug. 19, 2008, no pet.) (mem. op.); *Pace v. Pace*, 160 S.W.3d 706, 714 (Tex. App.—Dallas 2005, pet. denied); *Rogers v. Rogers*, No. 14-00-00077-CV, 2001 WL 1013405, at *3 (Tex. App.—Houston [14th Dist.] Sept. 6, 2001, pet. denied) (mem. op.). Any doubt as to the character of property should be resolved in favor of the community estate. *Moroch*, 174 S.W.3d. at 856.

The basis of Russell's claim that the Exos stock is his separate property is that the stock could be traced to intellectual property he created and possessed before his marriage to Marlene. But Russell's evidence was both vague and unsupported by

the documentary evidence. His employment contract stated he was given over $750,000 in monetary compensation for access to his intellectual property. There is no mention in the contract of Exos stock. Although Exos's CEO, Quinn, testified the stock was granted to Russell in exchange for Exos's ability to use his intellectual property, he also testified that Russell's intellectual property was his "experience developing technologies" up until 2015 when he began working for Exos. The time period specified by Quinn in which Russell's intellectual property was developed includes almost a decade of Russell's marriage to Marlene.

Russell conceded at trial that he continued to create intellectual property after he married Marlene, but dismissed his work after 2005 as "derivative." Russell had no patents, copyrights, trademarks, or other documentation, however, to demonstrate the content of his purported intellectual property, when it was developed, or when any rights or title to it could have arisen. Indeed, he testified it would be impossible for him to identify exactly what intellectual property of his Exos used. In short, Russell's evidence that he received the shares of Exos stock at issue solely in exchange for intellectual property he created before his marriage falls far short of the clear and convincing standard necessary to overcome the presumption that the shares are community property. *See Graves*, 329 S.W.3d at 140.

Furthermore, even if we assume Russell sufficiently demonstrated the Exos stock was granted in exchange for a right to use intellectual property he created before his marriage, the stock still cannot be classified as separate property. Revenue

generated during marriage from intellectual property created before marriage is community property. *Alsenz v. Alsenz*, 101 S.W.3d 648, 654 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Russell argues this rule is not applicable here because he exchanged his intellectual property for Exos stock and the proceeds from the sale of separate property remain separate property. *Pace*, 160 S.W.3d at 715. This argument is defeated by Russell's own evidence which clearly shows he did not sell his intellectual property to Exos, but only granted Exos a non-exclusive license to use it.

Russell's employment agreement states his intellectual property remains his "sole and exclusive property." Russell confirmed this at trial, testifying he retained full ownership of the intellectual property he allowed Exos to use. Exos's grant of stock in exchange for a non-exclusive right to use Russel's intellectual property is, therefore, revenue generated by the property and not one asset exchanged for another. *See Alsenz*, 101 S.W.3d at 653. Because the revenue was generated during the marriage, it is community property. *Id*. at 654.

Based on the foregoing, we conclude the trial court abused its discretion in characterizing the one million shares of Exos stock as Russell's separate property.

We reverse the trial court's judgment and remand the case for a re-division of the marital estate in accordance with this opinion and the parties' previous agreements.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

220513F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MARLENE ESTHER BLINK,
Appellant

No. 05-22-00513-CV        V.

RUSSELL PETER BLINK, Appellee

On Appeal from the 302nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-19-23159.
Opinion delivered by Justice
Reichek. Justices Partida-Kipness
and Miskel participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for a re-division of the marital estate in accordance with this opinion and the parties' previous agreements.

It is **ORDERED** that appellant MARLENE ESTHER BLINK recover her costs of this appeal from appellee RUSSELL PETER BLINK.

Judgment entered July 18, 2023