

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MONICA MARIE COCKRELL, | § | No. 08-24-00096-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law |
| ROY EDWARD COCKRELL, | § | of Burnet County, Texas |
| Appellee. | § | (TC#54094) |

## MEMORANDUM OPINION[1]

Appellant Monica Marie Cockrell appeals the trial court's judgment characterizing and dividing property in her divorce from Appellee Roy Edward Cockrell. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Monica and Roy were married on January 10, 2021. A year and eight months later, Roy filed for divorce. Monica filed a counterpetition. No children were born of the marriage and the only issue in the divorce was the characterization and division of property. The trial court

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

judgment, specific provisions of which are discussed in detail below, confirmed certain property as Roy's separate property and divided the community property. In general, the trial court divided the community property equally by awarding specific items to one party and granting a judgment for half the value to the other party. Community property bank accounts and cash were also divided equally. The judgments equalizing the division of the property were $232,878.85 for Monica and $56,300 for Roy. The trial court also found that Monica converted separate property of Roy's and granted a judgment against her for $80,000. After offsetting the judgments, Roy was ordered to pay Monica $96,578.85.

In her first issue, Monica challenges the characterization of arrowheads, real estate owned by Roy's business, and a BMW. In her second issue, she argues that the community estate should have been reimbursed for mortgage payments on Roy's separate property residence. And her third issue asserts error in failing to divide a necklace, sword, deer, and a bow and arrow.[2]

## II. ANALYSIS

### A. Characterization of property

Monica claims that the trial court mischaracterized as Roy's separate property arrowheads, a BMW, and the real property in Marble Falls held by Roy's business. Separate property is property "owned or claimed by the spouse before the marriage," property received by gift or inheritance, and compensation for personal injuries "except any recovery for loss of earning capacity during marriage." Tex. Fam. Code Ann. § 3.001; Tex. Const. art. XVI § 15. Community property is everything acquired during a marriage that is not separate property. Tex. Fam. Code Ann. § 3.002.

---

[2] Monica's statement of facts in her brief also identifies certain rental property and a 1977 Chevrolet truck as assets that are at issue in this appeal. However, she makes no arguments about either the characterization or division of these assets.

2

"Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." Tex. Fam. Code Ann. § 3.003(a). That presumption can be rebutted by clear and convincing evidence that the property is separate property of a spouse. *Id*. at §3.003(b). Clear and convincing evidence is that which "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* at §§ 101.007, 1.001(b) (applying the definitions in Chapter 101 to Title 1 of the Family Code).

Reviewing a trial court's characterization of property is a two-step process. First, we review whether the evidence was legally and factually sufficient. In this step, the heightened burden of proof affects our review. We must determine whether a reasonable fact finder could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). The distinction between a legal and factual sufficiency review is the evidence that we consider. In reviewing the legal sufficiency of the evidence, we "look at all the evidence in the light most favorable to the finding" but we should "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* In reviewing the factual sufficiency of the evidence, we broaden our consideration to include disputed evidence and whether it "is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.*

The second step in a review of the characterization of property is a harm analysis. The appellant has the burden of showing that the trial court's mischaracterization caused it to divide the property unjustly. *Evans v. Evans*, No. 03-01-00281-CV, 2002 WL 1343219, at *2 (Tex. App.—Austin June 21, 2002, no pet.) ("The appellant must also prove that a disparity in the division was caused by the mischaracterization of such property and was so substantial as to constitute an abuse of the trial court's discretion.").

We will begin with the first step and reviewing the sufficiency of the evidence.

### (1) Arrowheads

The characterization and division of the arrowheads was the most contested issue at trial. The trial court found that the parties had a total of 1541 arrowheads, 834 of which were Roy's separate property. Specifically, it found that 527 arrowheads were ones that Roy personally found before the marriage and 307 were purchased before the marriage.

Roy testified that he began collecting arrowheads from his and a friend's property in 2007. His ex-wife and son also corroborated that this was a family activity. Roy originally testified that approximately 500 of the arrowheads were his personal finds. However, the following day at trial, Roy and his son said that they counted the arrowheads in his possession the night before and that 427 were his personal finds. He also testified that Monica had in her possession 100 arrowheads that he found before the marriage. Roy's testimony about the purchased arrowheads was similarly more general on the first day of trial. That day he testified that he purchased about 500 before the marriage. After counting the arrowheads that night, Roy clarified that he had in his possession 290 arrowheads that were purchased before the marriage. He also testified that Monica had 19 pre-marriage purchases in her possession. The court, however, found that only 17 in Monica's possession were purchased by Roy before marriage.[3]

Monica disputed this evidence. She claimed that there were 2000 arrowheads and all but 100 were acquired after the marriage. The trial court wholly disregarded this evidence because of its findings, which Monica does not challenge, that her testimony was "not credible, designed to mislead the Court and lacked candor and reliability."[4] We will likewise not consider this testimony

---

[3] It appears that the trial court's finding differs from Roy's testimony because Roy testified that Monica had a total of 161 arrowheads; 100 were personal finds, and 44 were purchased after the marriage, which leaves only 17.

[4] This was also the subject of post-trial contempt hearings in which the trial court made detailed findings. As the trial court explained, Monica testified in pretrial hearings that she had around five arrowheads in her possession that she

4

in our sufficiency analysis because it is the function of the fact finder (in this case, the trial court) to make credibility determinations and we will not disturb those on appeal. *Eichhorn v. Eichhorn*, No. 03-20-00382-CV, 2022 WL 1591709, at *6 (Tex. App.—Austin May 20, 2022, no pet.) (mem. op.) (refusing to consider husband's testimony because the trial court ruled it was not credible).

Monica contends Roy did not meet his burden to establish by clear and convincing evidence that the arrowheads were his separate property because he did not trace them to his separate property.[5] "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 354 (Tex. App.—Austin 2002, pet. denied) Separate property retains its character as separate property even if it is used to acquire different property. *Kelly v. Kelly*, 634 S.W.3d 335, 358 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *Marriage of Taylor*, No. 06-14-00061-CV, 2015 WL 428121, at *3 (Tex. App.—Texarkana Feb. 3, 2015, no pet.) (mem. op.). For example, if one spouse uses funds from an inheritance (separate property) to purchase real property during the marriage, the real property takes on the character of those funds and is also separate property. *Pace v. Pace*, 160 S.W.3d 706, 709, 712 (Tex. App.—Dallas 2005, pet. denied). To present clear and convincing evidence that property acquired during

---

took from the home. She was ordered to put them in a safe deposit box and at a later hearing, told the trial court that she did not have any more in her possession. It was revealed that her original testimony was false. At trial she testified that she had more than 90 arrowheads in her possession and at a posttrial contempt hearing, she admitted to having 197 arrowheads in her possession. Instead of putting them in a safe deposit box or bringing them to Roy's attorney as she had been ordered, she brought them to the home of Sally Wagner, a friend's mother-in-law. Sally testified that when she told Monica that she was subpoenaed, Monica asked her to lie about the arrowheads. Monica also failed to include these arrowheads on the sworn inventory of property in her possession.

[5] Monica also complains that the trial court erred in confirming some arrowheads as Roy's separate property without identifying *which* ones were separate property. Such a finding may have been necessary if the trial court ordered the exchange of any arrowheads, but it did not. It grouped the arrowheads by how many were in each party's possession that were community or separate property, and it valued each group, but it did not order that any change possession. As for the separate property arrowheads in Monica's possession, the trial court awarded a judgment against Monica for conversion. Neither party appeals that portion of the order.

the marriage is separate property because it has its origin in separate property, the spouse must trace the property to separate assets. *Id*. at 712).

But tracing is not necessary when there is no claim that separate property "had been sold, traded, or otherwise converted into any other asset." *Wells v. Wells*, 251 S.W.3d 834, 840 (Tex. App.—Eastland 2008, no pet.) (holding that tracing was not necessary when the separate property claim was because the property was a gift to the wife). Roy did not claim, and the trial court did not find, that a portion of the arrowheads were his separate property because they were acquired with separate property. Instead, the separate property arrowheads were characterized as such because the trial court found that they were acquired before the marriage. Tex. Fam. Code Ann. § 3.001; Tex. Const. art. XVI § 15; *DeSpain v. DeSpain*, 704 S.W.3d 866, 869–70 (Tex. App.—Austin 2024, no pet.) ("Generally, whether property is separate or community property is determined by its character at inception.").

We hold that viewing the evidence in a light favorable to the judgment, a reasonable fact finder could form a firm belief or conviction based on the testimony of Roy and his witnesses that 834 arrowheads were Roy's separate property. The evidence is therefore legally sufficient. And because we have disregarded Monica's testimony, which is the only controverting testimony, the evidence is factually sufficient.

### (2) Putters and Gutters–Marble Falls

Roy was the managing member of R Cockrell Enterprises LLC which owned a business called Putters & Gutters. It was undisputed that property for a Putters and Gutters location in Marble Falls was acquired during the marriage. Monica argues that Roy did not produce evidence tracing its acquisition to separate property funds.

6

Roy testified that he purchased a five-acre lot from DSS in 2019, before the marriage. Pedernales Electric Co-op (PEC) wanted that property and Roy explained that he agreed to transfer that lot to PEC in exchange for a neighboring lot, all of which were owned by DSS. After the marriage, Roy transferred his lot to PEC, and the neighboring lot was transferred to him. He essentially swapped one lot for another. "Property acquired in exchange for separate property becomes the separate property of the spouse who exchanged the property." *Ridgell v. Ridgell*, 960 S.W.2d 144, 148 (Tex. App.—Corpus Christi 1997, no pet.) (citing *Dixon v. Sanderson*, 10 S.W. 535, 536 (1888)); *Matter of Marriage of Douthit*, 573 S.W.3d 927, 930 (Tex. App.—Amarillo 2019, no pet.) (explaining that evidence that husband traded land he owned before the marriage for property was sufficient to support the finding of separate property). Monica offered no contrary evidence. We hold that the evidence was legally and factually sufficient for the trial court to form a firm belief or conviction that the Marble Falls property was acquired in exchange for Roy's separate property and was therefore itself separate property.

### (3) BMW

The parties agree that a BMW was purchased during the marriage to be used by Monica's daughter. Monica argues that there was no evidence that the BMW was Roy's separate property. Monica misconstrues the trial court's findings and order. The trial court found that the presumption that the BMW was community property was *not* rebutted. As community property, it was divided by the trial court with possession of the vehicle awarded to Monica and a cash judgment of half of the value awarded to Roy.

As there was sufficient evidence to support the trial court's characterization and confirmation of separate property, we need not proceed to the second step and conduct a harm analysis. Monica's first issue is overruled.

7

### B. Reimbursement for mortgage payments

The marital residence was purchased by Roy before the marriage and is his separate property. Monica does not dispute the characterization of the property but argues that she is entitled to reimbursement because mortgage payments totaling $240,267.55 (approximately $39,700 of which were for principal) were paid during the marriage.

A spouse can claim reimbursement "when one or both spouses use property of one marital estate to confer on the property of another marital estate a benefit which, if not repaid, would result in unjust enrichment to the benefited estate." Tex. Fam. Code Ann. § 3.402(a). The party seeking reimbursement has the burden of showing "that the expenditures and improvements were made and that they are reimbursable." *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982); Tex. Fam. Code Ann. § 3.402(b). Like making a just and right division of the community property, the trial court has great discretion and resolving a reimbursement claim is "not merely a balancing of the ledgers between the marital estates." *Marin v. Marin*, No. 03-22-00013-CV, 2023 WL 2776296, at *4 (Tex. App.—Austin Apr. 5, 2023, no pet.) (mem. op.) (citing *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988)). We review the trial court's decision to deny reimbursement for an abuse of discretion. *Id.* "If some evidence supports the trial court's decision, there is no abuse of discretion." *Id.*

There is a split among the courts of appeals whether funds used to pay a debt during marriage are presumed to be community funds. Some courts, including our own, have held that there is such a presumption. *Kimsey v. Kimsey*, 965 S.W.2d 690, 702 (Tex. App.—El Paso 1998, pet. denied); *see also In re Marriage of Edwards*, No. 06-12-00016-CV, 2012 WL 4503413, at *3 (Tex. App.—Texarkana Oct. 2, 2012, no pet.) (mem. op.); *McCann v. McCann*, 22 S.W.3d 21, 23 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Day v. Day*, No. 04-23-00476-CV, 2024 WL

8

3056665, at *7 (Tex. App.—San Antonio June 20, 2024, pet. denied) (mem. op.). However, the Austin court of appeals, from which this case was transferred, has held that the party seeking reimbursement has the burden of showing that the funds used were community funds. *Williams v. Clark*, No. 03-03-00585-CV, 2004 WL 1171704, at *3 (Tex. App.—Austin May 27, 2004, no pet.) (mem. op.) (affirming the denial of reimbursement when "there [was] no showing that the funds used to pay the debt were community funds"); *Jenkins v. Robinson*, 169 S.W.2d 250, 251 (Tex. App.—Austin 1943, no writ) ("the burden was on appellees to prove that the notes were paid in part with community funds"). As a transferee court, we must follow the precedent of the Third Court of Appeals when it conflicts with our own. Tex. R. App. P. 41.3. The evidence at trial showed that payments on the property were paid during the marriage, but Monica offered no evidence of the source of those funds.

Because the evidence was insufficient to show that community funds were used to pay the mortgage on Roy's separate property residence, the trial court did not abuse its discretion in denying Monica's reimbursement claim. Issue two is overruled.

## C. Failure to divide community property

Monica argues that "a number of assets were wholly ignored by the trial court" resulting in a disproportionate division of the estate. She specifies that these are an Indian necklace, a medieval sword (described at trial as a mid-1800 sword), a herd of deer, and a bow and arrow.

First, it is inaccurate to say that the trial court ignored these assets. It found that the community estate included fallow deer valued at $4500. The deer were awarded to Roy and Monica was awarded a money judgment of $2250.00. The trial court also awarded to Roy the necklace, sword, and bow and arrow pursuant to the decree's provision that grants him all "goods, art objects, [and] collectibles" in his possession and sole control.

9

Monica's true complaint seems to be that because of the value of these items, their award to Roy results in a disproportionate division of the property. The trial court was obligated to divide the property "in a manner that the court deems just and right." Tex. Fam. Code Ann. § 7.001. We review the division of property for abuse of discretion. *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.). "To constitute an abuse of discretion, the property division must be manifestly unfair." *Id.*

The parties gave drastically different testimony about the value of these specific items. Roy testified that the necklaces (6 strands) are only $5-10 a strand whereas Monica says that they are worth $40,000. Monica claims in her brief that the sword is valued at $25,000; this misquotes her own testimony which was that the sword was worth $2500. Roy believed the deer to be worth $4500; Monica, $60,000. And Roy says that the bow and arrow was purchased for $1500; Monica says $2500. The result is that Monica argues that these items represent $126,500 in community property and Roy testified that they are worth no more than $8560.[6]

"As the trier of fact in a bench trial, the court determines the credibility of the witnesses and the weight to be given their testimony, whether to believe or disbelieve all or any part of the testimony, and how to resolve any inconsistencies in the testimony." *Wilson v. Wilson*, No. 03-03-00196-CV, 2004 WL 524465, at *1 (Tex. App.—Austin Mar. 18, 2004, no pet.) (mem. op.). So long as there is evidence to support the trial court's decision, we cannot second-guess it. The trial

---

[6] According to the trial court's findings, the total value of all the community property except two bank accounts that were split equally was $467,573. If the trial court accepted Roy's valuation of these contested items, they only amounted to 1.83% of the value of the community estate.

court could have reasonably found that the property was valued as Roy testified. The division of the property is not so disproportionate as to constitute an abuse of discretion.[7]

We overrule Issue Three.

## III.  CONCLUSION

The evidence was sufficient to support the trial court's judgment as to characterization of property as Roy's property, denial of reimbursement for mortgage payments, and the division of specific pieces of property. The judgment of the trial court is affirmed.

MARIA SALAS MENDOZA, Chief Justice

April 10, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

---

[7] Again, we note that Monica was awarded a judgment for her share of the deer. The divorce decree also awarded to Monica the "household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment" in her possession. Roy testified that Monica had the couple's furniture worth $10,000 and he was granted a judgment for half that amount.

11