# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00336-CV

---

**Thomas Luke Ponzio, Appellant**

**v.**

**Alexis Ponzio, Appellee**

---

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-21-006025, THE HONORABLE MARIA CANTÚ HEXSEL, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Thomas Luke Ponzio appeals the trial court's Final Decree of Divorce, rendered after a bench trial. In addition to dissolving Thomas's marriage to appellee Alexis Ponzio, the trial court ordered in the final decree that Thomas must pay more in child support than the applicable statutory guidelines require, and it awarded reimbursements to Alexis.[1] In three appellate issues, Thomas contends that (1) the amount of support awarded above the guidelines amount, which the trial court earmarked for the children's daycare costs, omitted a necessary statutory finding and was not supported by the evidence; (2) a reimbursement claim stemming from the reduction in the principal debt on his separate-property house was improper or at least should not have appreciated in value during the parties' marriage; and (3) two reimbursement claims stemming either from

---

[1] Because the parties shared a surname, we refer to them by their given names for ease of reference.

funds expended or from efforts that Alexis and her parents undertook were improper. We affirm in part and reverse and remand in part.

**BACKGROUND**

Thomas and Alexis married in 2017 and separated in October 2021. They have two children of the marriage, a daughter who was three years old at the time of trial (Daughter) and a son who was nearly two (Son). Thomas owned a house on Running Brush Lane (the Running Brush House) before the marriage, and during the marriage, the couple's community estate undisputedly paid down $14,623.54 of the principal debt on the Running Brush House. One of Alexis's claims in the divorce is that after the couple decided to sell the Running Brush House, Alexis and her parents expended a great deal of time, toil, and effort to ready the house for sale and that Alexis should be reimbursed for those efforts.

In 2019, the couple bought and moved into a house on Adelanto Court (the Adelanto House). Another of Alexis's claims in the divorce is that before Thomas would agree to move into the house, he required that she spend $18,583.70 (out of a total $25,000 gift to her from her parents) to improve the Adelanto House and thus that the community estate should reimburse Alexis's separate estate for that expenditure of funds. Daughter was born around the time that the couple finished the move to the Adelanto House, and just over a year later Son was born.

The couple experienced discord in their relationship, including over caring for the two children. Alexis testified at trial that she had the children in a high-quality daycare because of some of the children's personal difficulties but Thomas wanted the children placed in a less expensive daycare.

2

The discord grew to the point that, in early October 2021, Alexis moved herself and the children out of the Adelanto House and soon after filed for divorce. Thomas filed a counterpetition for divorce, as well. The parties eventually came to an agreement on many of the issues raised in the pleadings, including issues like separate property and award of child support calculated according to the statutory guidelines. But other issues the parties tried to the bench.

The disputed issues included whether Thomas should pay for half of the children's daycare in addition to the amount of child support that he would otherwise be ordered to pay under the statutory guidelines. They also included reimbursement claims arising out of payments for or work to improve first the Running Brush House and later the Adelanto House. Each side retained an expert in issues about community property, tracing, and accounting to testify on their behalf at trial.

After the trial, the trial court granted the divorce, made orders about conservatorship and custody, ordered Thomas to pay guidelines child support, confirmed each party's separate property, and divided the parties' community property. Those issues are uncontested in this appeal. The issues in this appeal include (1) the trial court's order that Thomas pay additional child support for the children's daycare in excess of the guidelines child support that he was otherwise ordered to pay; (2) the award on Alexis's claim for a reimbursement in the community estate's favor for the decrease in the principal debt on the Running Brush House; (3) the award on her claim for a reimbursement for the time, toil, and effort expended by her and her parents to ready the Running Brush House for sale; and (4) the award on her claim for a reimbursement in her separate estate's favor for the funds that she expended from the gift from her parents to improve the Adelanto House in 2019, allegedly resulting in a higher sale price for that house when the couple sold it in 2022 while this divorce suit was pending.

After the trial court signed its final decree, Thomas timely requested findings of fact and conclusions of law. The court then sent its written findings and conclusions to the parties. Afterward, Thomas requested additional findings and conclusions. The court obliged, sending written additional findings and conclusions to the parties soon after.

Thomas now appeals the final decree, challenging the above-guidelines child support for daycare and the three reimbursement claims that we have detailed.

## STANDARD OF REVIEW

Thomas challenges the trial court's child-support order and its division of the community estate. We review both these challenges to the final decree under an abuse-of-discretion standard. *See Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011) (addressing child support); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981) (addressing property division); *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1998) (addressing reimbursement claims). A trial court abuses its discretion if it "'act[s] without reference to any guiding rules or principles,' such that its ruling [is] arbitrary or unreasonable." *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam).

In family-law cases, the abuse-of-discretion standard overlaps with traditional standards for reviewing the sufficiency of the evidence. *See Zeifman v. Michels*, 212 S.W.3d 582, 587-88 (Tex. App.—Austin 2006, pet. denied). Consequently, legal and factual insufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Id.* at 587. To determine whether the trial court has abused its discretion, we engage in a two-pronged inquiry, analyzing whether (1) the trial court had sufficient evidence upon which to exercise its discretion and (2) the trial court erred in its application of that discretion. *Id.* at 588.

4

Traditional standards for legal- and factual-sufficiency review come into play with regard to the first question. *Id.*

Under the legal-sufficiency standard, when the appellant attacks the legal sufficiency of an adverse finding on which he did not have the burden of proof, he must demonstrate on appeal that there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). We credit all evidence and inferences favorable to the trial court's decision if a reasonable factfinder could, and we disregard all evidence to the contrary unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *Id.* Evidence is legally insufficient when (1) there is a complete absence of a vital fact; (2) rules of law or evidence preclude giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *See id.* at 810, 815-16. Under the factual-sufficiency standard, when the appellant attacks the factual sufficiency of an adverse finding on which he did not have the burden of proof, we consider and weigh all the evidence in the record pertinent to the finding to determine if the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016).

Because the trial court acts as the factfinder in a bench trial, the trial court is the "sole judge of the credibility of the witnesses and the weight to be given their testimony." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). The trial court does not abuse its discretion if it bases its decision on conflicting evidence or when evidence of a probative or

substantive character exists to support the decision. *Zeifman*, 212 S.W.3d at 587. "The mere fact that a trial court decided an issue in a manner differently than an appellate court would under similar circumstances does not establish an abuse of discretion." *Id.*

## ANALYSIS

### I.    Above-guidelines child support

Thomas contends that the trial court abused its discretion by ordering Thomas to pay above-guidelines child support in the absence of any finding that the application of the guidelines would be unjust or inappropriate. In addition to the monthly child support of $1,830.78 that Thomas was ordered to pay, the trial court ordered "[a]s additional child support" that Alexis and Thomas must each pay 50% of the children's daycare costs, directly to the children's daycare. The order specified that the amount to be paid was $1,490 for each of them per month, or half the daycare's monthly cost each if the monthly cost changes.[2]

The particular finding that Thomas argues is missing is required by Family Code Section 154.130: when a trial court orders child support in an amount that varies from the amount computed by applying the appropriate statutory percentage guidelines, the court "shall state whether the application of the guidelines would be unjust or inappropriate." Tex. Fam. Code § 154.130(a)(3), (b); *see In re J.M.W.*, 470 S.W.3d 544, 554 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (emphasizing mandatory "shall" language of statute requiring findings to support

---

[2] Alexis does not argue that this monthly amount for daycare is anything other than a child-support obligation.

deviations from child-support guidelines).  Thomas argues not only that the finding was not made but also that it cannot be deemed in favor of the judgment and that the evidence did not support it.[3]

We begin by noting that Thomas is correct that in neither its original set of written findings and conclusions nor in its later set of additional findings and conclusions did the trial court state a finding that "the application of the guidelines would be unjust or inappropriate."  But that is not the end of the issue.  Even when the statutory "unjust or inappropriate" finding is missing, any error in its omission is harmless when the trial court's explanation is sufficiently adequate to allow an appealing party to properly present the party's case to the court of appeals. *Stanfield v. Stanfield*, No. 01-05-00379-CV, 2005 WL 3454139, at *2 (Tex. App.—Houston [1st Dist.] Dec. 15, 2005, no pet.) (mem. op.); *see Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam) (applying this harm standard in appeal of child-support award); *Goyal v. Hora*, No. 03-19-00868-CV, 2021 WL 2149628, at *4 (Tex. App.—Austin May 27, 2021, no pet.) (mem. op.) (citing two cases for respective propositions "that court's findings sufficiently informed father where to direct his evidentiary challenges and that reasons stated by trial court were adequate to satisfy section 154.130" and "that substantial compliance with statutory predecessor to section 154.130 was sufficient" (citing *In re Gonzalez*, 993 S.W.2d 147, 155 (Tex. App.—San Antonio 1999, no pet.); *Zajac v. Penkava*, 924 S.W.2d 405, 410 (Tex. App.—San Antonio 1996, no pet.))).  The trial court here provided an adequately sufficient explanation to allow Thomas to challenge the support award on appeal—the court explained in its findings about the support award for daycare that "[i]t is in the children's best interest that they continue to attend daycare" and in their best interest that Alexis and Thomas "each pay 50% of the children's daycare expense,

---

[3] The trial court's findings otherwise included the other items called for by Section 154.130.

directly to the daycare provider, beginning on November 1, 2022." On appeal, Thomas has challenged the evidence supporting an "unjust or inappropriate" finding and could have challenged the trial court's best-interest findings on this topic. He thus was not prevented from properly presenting his case on appeal, so the omission of the "unjust or inappropriate" finding was harmless. *See Stanfield*, 2005 WL 3454139, at *2.

Second, Thomas argues that the evidence did not support the omitted finding because "Alexis produced no evidence regarding any special or extraordinary educational, health care, or other expenses of the parties or of the children"; did not expand on her testimony that one of the children would "most likely" need speech therapy or on her testimony that the other child suffered from anxiety; did not explain why a less expensive daycare for the children would not suffice; and presented conflicting testimony about her own income.

We conclude that the evidence before the trial court supported the implied finding that applying the statutory guidelines would be unjust or inappropriate. When a trial court decides that applying the guidelines would be unjust or inappropriate and the evidence rebuts the presumption that application of the guidelines is in the best interest of the child, the trial court may order payments in an amount other than that established by the guidelines and should take into account statutory factors like the age and needs of the child; child-care expenses incurred by either party to maintain gainful employment; special or extraordinary educational, healthcare, or other expenses of the child; and any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents. *See* Tex. Fam. Code §§ 154.122(b), 154.123(a), (b)(1), (6), (13), (17); *Rojas v. Guardado*, No. 01-13-00049-CV, 2014 WL 5465694, at *5 (Tex. App.—Houston [1st Dist.] Oct. 28, 2014, no pet.) (mem. op.).

8

There was evidence under one or more of these statutory factors. For example, Alexis testified that she works fulltime and that she has had Daughter in daycare since she was 18 months old and Son in daycare since he was 13 months old. Alexis also testified that the children are thriving in their current daycare placement, which provides them with a high quality of care in light of the children's personal needs. Along those lines, Alexis testified that Daughter has recently developed an anxiety problem, which sometimes entails Daughter's becoming overly concerned when Alexis is absent and periodically regressing developmentally, and that Son suffers from developmental delays stemming from premature birth, which have required feeding, occupational, and physical therapy. Because of this evidence from Alexis, we reject Thomas's argument that no evidence supported a Section 154.130 "unjust or inappropriate" finding. We also reject his argument that Alexis's conflicting evidence about her income meant that the finding was inappropriate here. *See City of Keller*, 168 S.W.3d at 820 (explaining that "[i]t is the province of the [factfinder] to resolve conflicts in the evidence" and that appellate court must assume factfinder resolved all conflicts in support of its verdict).

We conclude that although the trial court erred by omitting from its findings the required statement under Section 154.130(b) that "the application of the guidelines would be unjust or inappropriate," its error was harmless. We further conclude that the evidence supports such an implied finding, and therefore, the trial court did not abuse its discretion by ordering Thomas to pay above-guidelines child support. We overrule Thomas's first issue.

## II.     Reimbursement to community estate for payment of principal debt on the Running Brush House

In his second issue, Thomas contends that the trial court abused its discretion by improperly attributing to the community estate, rather than to his separate estate, $14,623.54 of

9

the part of the couple's down payment on the Adelanto House that had originated as proceeds from Thomas's sale of his separate-property Running Brush House. Thomas argues that all proceeds from his sale of the Running Brush House should have been treated as his separate property and thus that all such proceeds that the couple used as part of the down payment on the Adelanto House remained Thomas's separate property. But Alexis has taken the position, both in the trial court and on appeal, that of the total proceeds of the Running Brush sale, $14,623.54 was community property rather than Thomas's separate property because that is the amount that the principal debt on the Running Brush House had been decreased while the parties were married.

On appeal, although Alexis maintains her position that the $14,623.54 is a reimbursement claim in the community estate's favor against Thomas's separate estate, she now makes a concession relating to that reimbursement amount. Alexis's position at trial, adopted by the trial court, was that because the $14,623.54 is in the nature of a reimbursement claim in the community estate's favor, the community estate's interest in the Adelanto House should include not only what the parties agree to be its interest but also an amount of the proceeds of the sale of the Adelanto House equal to the proportion of the purchase price of that house that was made up by the $14,623.54. In this way, Alexis argued at trial that the amount attributable to this reimbursement claim represents a distinct interest in the proceeds of the sale of the Adelanto House that should be recognized in the divorce decree and that the interest could be used to calculate the appreciation in the house's value in proportion to its share of the original purchase price of the house. The trial court adopted that view in the final decree and in its findings and conclusions.

But now on appeal, faced with Thomas's argument that no reimbursement claim could arise during the marriage because reimbursement claims mature only upon dissolution of the community by, for example, death or divorce, *see* Tex. Fam. Code § 3.404(b), Alexis concedes

that the trial court erred by allowing this reimbursement claim to appreciate in value in the way that we have explained. Alexis thus concedes that the reimbursement claim should be fixed at $14,623.54.

Although this concession answers part of Thomas's second appellate issue, it does not answer the rest, in which he argues that the community estate can enjoy no such reimbursement claim at all because there is no finding of fact to support it and because Alexis did not plead for it.

Alexis responds to the no-pleading argument with the rule of trial by consent. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tex. R. Civ. P. 67. We agree with Alexis that this reimbursement claim was tried by consent—not only did Alexis present evidence on the claim, but Thomas also adduced evidence about it, in the form of testimony by his expert and an exhibit detailing his expert's views about the claim, and he did not object to the lack of pleadings to support the claim. *See Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009); *Jones v. Carson*, No. 03-22-00086-CV, 2023 WL 3873509, at *7 n.2 (Tex. App.—Austin June 8, 2023, no pet.) (mem. op.).

As for the no-finding argument, Thomas takes issue with the court's not designating the $14,623.54 as a "reimbursement" in its findings and conclusions, even though, as Thomas recognizes, the court in its findings and conclusions ruled that the $14,623.54 was a "contribution and payment . . . from the community property estate" toward the down payment on the Adelanto House. Because this finding represents at least one finding on the elements of this reimbursement claim, *see* Tex. Fam. Code § 3.402(b)(1)-(2) ("A spouse seeking reimbursement to a marital estate must prove: (1) that the spouse or both spouses used property of the marital estate to confer a benefit on the property of another marital estate [and] (2) the value of the benefit described by

11

Subdivision (1) . . . ."); Tex. R. Civ. P. 299 (presumed findings), and because evidence, in the form of testimony by Alexis and by her expert and Alexis's documentary exhibits, supported any necessary finding that the $14,623.54 was a "reimbursement," we reject Thomas's remaining arguments under his second issue.

Although the trial court abused its discretion by awarding this reimbursement claim in an amount more than $14,623.54, sufficient evidence supports treating the $14,623.54 as a reimbursement for the community's contribution and payment toward the down payment on the Adelanto House. We sustain Thomas's second issue only to the extent of Alexis's concession.

### III. Reimbursements to Alexis for time, toil, and effort for improvements made to the Running Brush House and for funds spent to improve the Adelanto House

In his third issue, Thomas contends that the trial court erred by awarding two other reimbursement claims. The court awarded "$21,560.00 as reimbursement from Thomas . . . for time, toil, and effort for improvements made to the Running Brush" House by Alexis and her parents and "$18,583.70 as reimbursement from Thomas . . . for a gift to Alexis . . . from her parents." Thomas argues that the trial court erred by making both awards because Alexis did not offer any proof of the enhancement to the values of the properties. As the party claiming the right of reimbursement, Alexis had "the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable." *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982).

#### A. Reimbursement for time, toil, and effort

The principle underlying reimbursement is that when the community estate improves a spouse's separate estate without receiving a benefit, an equitable claim arises against

the property of the separate estate. *See id.*; *see also* Tex. Fam. Code § 3.404(b) (establishing that claim for reimbursement is claim against property of benefited estate by estate that conferred benefit). In awarding the reimbursement claim for $21,560, the trial court determined that Alexis's and her parents' time, toil, and labor benefited Thomas's separate estate without the community estate receiving some benefit. *See Mason v. Mason*, No. 03-17-00546-CV, 2019 WL 1967166, at *5 (Tex. App.—Austin May 3, 2019, no pet.) (mem. op.).

Alexis testified at trial that she and her parents had completed many projects on the Running Brush House to make it ready to sell, including installing new flooring and tile, painting, and adding a sprinkler system and sod. The trial court admitted into evidence a spreadsheet showing the projects completed, the cost of materials for each project, the hours that she and her parents worked to complete each of those projects, and the estimated cost for a professional to come in and perform the labor for each project (the "Time Toil Effort" column). The total dollar amount spent on materials, which Alexis testified were purchased with community funds and for which she did not seek reimbursement, was $35,775. The total number of hours that she and her parents worked on the projects was 195. The total time, toil, and effort amount that Alexis claimed as reimbursement for the community, based on the estimated cost for professionals to do the labor that she and her parents did, was $26,950. The trial court arrived at its $21,560 award by discounting Alexis's figure to 80% of the claimed amount.

Thomas challenges this award in three ways. First, he argues that the trial court did not apply the appropriate statutory measure, asserting that Alexis's claim should be measured by the enhancement in value to the Running Brush House, and that Alexis presented no evidence of enhancement in value. Second, he asserts that Alexis's testimony to support the claim is no evidence because it was conclusory or speculative about the value of her and her parents' efforts.

13

Finally, he contends that Alexis is not entitled to reimbursement based on her parents' hours of labor on Thomas's separate property and that because she did not segregate her hours of labor from theirs, the trial court could not have determined what value to assign to Alexis's work.

We first consider the appropriate measure for calculating Alexis's reimbursement claim for her and her parents' time, toil, and effort on the Running Brush House projects. Relying on the prior version of Section 3.402(d) applicable to this case, Thomas argues that the trial court should have calculated the reimbursement claim by measuring the enhancement in value of the benefited separate estate, not the value of Alexis's and her parents' time, toil, and effort. *See* Act of May 29, 2009, 81st Leg., R.S., ch. 768, § 3, sec. 3.402(d), 2009 Tex. Gen. Laws 1950, 1952 (amended 2023) (current version at Tex. Fam. Code § 3.402(d)(2)). We disagree. At the time this case was pending in the trial court, the prior Section 3.402(d) mandated that "[r]eimbursement for funds expended by a marital estate for improvements to another marital estate shall be measured by the enhancement in value to the benefited marital estate." However, the prior Section 3.402(d) did not apply to all claims for reimbursement; it applied only to claims "for *funds expended* by a marital estate for improvements to another marital estate." *Id.* (emphasis added). In contrast, a claim for reimbursement for uncompensated time and effort expended to benefit an asset belonging to a separate estate was measured by the cost to the community estate of the contribution of uncompensated time and effort.[4] *See Mason*, 2019 WL 1967166, at \*7; *see also* Act of May 29, 2009, 81st Leg., R.S., ch. 768, § 3, sec. 3.402(a)(8), 2009 Tex. Gen. Laws 1950, 1952 (establishing that claim for reimbursement also included "capital improvements to property other than by

---

[4] The current version of Section 3.402(d) codifies this measure for calculating reimbursement claims for "the use of time, toil, talent, or effort to enhance the value of property of a spouse's separate estate." Tex. Fam. Code § 3.402(d)(3).

incurring debt") (amended 2023) (current version at Tex. Fam. Code § 3.402(d)(3)); *accord Jensen v. Jensen*, 665 S.W.2d 107, 110 (Tex. 1984) (concluding in case involving reimbursement claim of community estate against spouse for time, toil, and effort enhancing value of his separate estate that proper measure was "the value of the time, toil and effort expended to enhance the separate estate other than that reasonably necessary to manage and preserve the separate estate, for which the community did not receive adequate compensation"). We conclude that the trial court appropriately sought to measure the value of the uncompensated time, toil, and effort expended by the community estate to improve Thomas's separate estate, and accordingly, we reject Thomas's argument that the expended-funds measure should apply to the $21,560 award.

Next, Thomas contends that "Alexis did not provide any support for how she arrived at these figures [for the cost of professional labor], and as such these dollar amounts are nothing more than bare opinion without any factual support and are not competent evidence." We disagree. Alexis provided some supporting evidence for the claimed value of the work done on the Running Brush projects—not only did she provide the spreadsheet establishing the amount of community funds expended for materials, which provides context for the scope of the projects, she also provided the aggregate amount of hours of work she and her parents spent on each project, and she testified about the tasks she and her parents did to perform the projects. Alexis's mother also testified about the tasks performed and the family's knowledge of construction. We conclude that this evidence was some evidence of the general value of the work done.

However, we agree with Thomas's argument that the trial court erred to the extent that it considered evidence of the time, toil, and effort of Alexis's parents when calculating the reimbursement award. The uncompensated time, toil, and effort of Alexis's parents did not impose any cost on the community estate.

15

Alexis's mother testified that she and her husband were heavily involved in the following projects at the Running Brush House:

> Installing a sprinkler system. My husband has a lot of knowledge on that and we helped with that. We helped replace some rotting columns and fixing those up. We helped put in the laminate flooring, the wood laminate flooring, the tile, backsplash. We changed a lot of the lights in the house, painted, lay sod, a lot.

Alexis did not segregate her hours of labor from her parents' hours of labor on the spreadsheet that she provided to support the dollar amounts that she argued should be reimbursed. The labor expended by Alexis's parents on Thomas's separate property is a benefit that Alexis's parents conferred on Thomas's separate estate, not a benefit that the community estate conferred on Thomas's separate estate. Thus, we conclude that the trial court abused its discretion by considering evidence of the time, toil, and effort expended by Alexis's parents to make improvements to the Running Brush House as support for Alexis's reimbursement claim.

In the absence of segregation of Alexis's hours from her parents' hours, there was not sufficient evidence of the value of Alexis's uncompensated time spent on the Running Brush projects, which represents the cost to the community of her contribution. Thus, we agree that the evidence offered to support the reimbursement claim amounts to no evidence and does not support the $21,560 reimbursement award. Because we conclude that the trial court lacked sufficient evidence to support this award, it abused its discretion in awarding this amount, and we reverse this award.

## B. Reimbursement for funds expended on the Adelanto House

Last is the reimbursement claim for $18,583.70—an expended-funds claim that concerns Alexis's efforts regarding the Adelanto House just before the couple moved into it.

16

Alexis adduced evidence that her parents gave her a $25,000 gift in September 2019, and of that gift, she spent $18,583.70 to make improvements to the Adelanto House. Alexis testified to her belief that these projects from around the time of the 2019 move-in contributed to the ultimately higher price that the couple received when selling the house in June 2022.[5]

One of Thomas's arguments on appeal against this $18,583.70 claim is that Alexis offered no evidence of how much the use of those funds increased the value of the Adelanto House, either at the time or when it was sold three years later. Alexis at trial offered as evidence only her belief that the funds expended increased the house's value by an indeterminate amount.[6] Because this reimbursement claim is an expended-funds claim, Thomas is correct that it required evidence of how much the value of the community asset had been increased by expenditure of Alexis's separate-property funds. *See In re Marriage of Douthit*, 573 S.W.3d 927, 932 (Tex. App.—Amarillo 2019, no pet.); *McCann v. McCann*, 22 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.]

---

[5] Separate from this testimony, Alexis also offered the testimony of the couple's realtor, who had been their agent for both the purchase of the Adelanto House and for its sale. The realtor testified that when the couple, during this case, was preparing to have the Adelanto House sold, Alexis and her parents completed a great many projects at the property to increase its sale value. The context of the testimony makes clear that it refers to efforts at the Adelanto House property during the time that this case was pending and just before that property was sold in 2022 and that it does not refer to the pre-2019-move-in efforts that Alexis otherwise testified about that made up the $18,583.70 claim.

[6] On appeal, Alexis makes no argument at all in defense of this $18,583.70 claim. She says only,

> To the extent that this court finds that the trial court erred in awarding either or both of Appellee's reimbursement claims regarding the two real properties, or in calculating Appellant's separate property interest in the proceeds from the sale of the community property residence, this Court should remand the issue to the trial court for further determination as to the allocation and division of those amounts from the net proceeds from the sale of the marital residence at Adelanto Court.

17

2000, pet. denied). Because we conclude that the trial court lacked sufficient evidence to support this award, it abused its discretion in awarding the $18,583.70 to Alexis, and we reverse this award.

We sustain Thomas's third issue.

## CONCLUSION

Because the final decree's awards that must be reversed affect the just-and-right division of the marital estate but no other portion of the decree, such as the granting of the divorce, custody and conservatorship, and child support, we reverse only the just-and-right division. *See* Tex. R. App. P. 44.1(b); *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985). The reimbursement claim based on the $14,623.54 community-property portion of the down payment on the Adelanto House must be limited to that dollar amount. We reverse the $21,560 reimbursement award for time, toil, and effort for improvements made to the Running Brush House and the reimbursement award based on the $18,583.70 of Alexis's separate-property funds spent for improvements to the Adelanto House. We remand the reversed portions of the final decree to the trial court for further proceedings consistent with this opinion. We otherwise affirm.

_____

Gisela D. Triana, Justice

Before Justices Triana, Kelly, and Crump
  Concurring and Dissenting Opinion by Justice Kelly

Affirmed in Part; Reversed and Remanded in Part

Filed:   June 27, 2025